UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------ x
:
KELLY JEAN PALMER           :     3:17 CV 1714 (RMS)
:
V.                          :
:
NANCY A. BERRYHILL,         :
ACTING COMMISSIONER OF      :
SOCIAL SECURITY[1]          :     DATE: DEC. 3, 2018
:
------------------------------------------------------ x

### RULING ON THE PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND ON THE DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks review of a final decision by the Commissioner of Social Security ["SSA"] denying the plaintiff disability insurance benefits ["DIB"].

I.  ADMINISTRATIVE PROCEEDINGS

On or about October 7, 2013, the plaintiff filed an application for DIB benefits claiming she has been disabled since December 1, 2008, due to degenerative disc disease, chronic pain and plantar fasciitis in both feet, back injury, and depression. (Certified Transcript of Administrative Proceedings, dated December 2, 2017 ["Tr."] 76, 175-81; *see also* Tr. 192).[2] The plaintiff's application was denied initially (Tr. 102-05), and upon reconsideration. (Tr. 111-13). On June 30, 2014, the plaintiff requested a hearing before an Administrative Law Judge ["ALJ"] (Tr. 114-15),

---

[1] On January 21, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. The Federal Vacancies Reform Act limits the time a position can be filled by an acting official, 5 U.S.C. § 3349(b); accordingly, as of November 17, 2017, Nancy Berryhill is serving as the Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

[2] Previously, the plaintiff filed an application for DIB on May 26, 2009 that was denied on September 17, 2009; she did not file an appeal. (Tr. 77).

and on November 23, 2015, a hearing was held in Massachusetts, before ALJ Addison C.S. Masengill, at which the plaintiff and a vocational expert testified. (Tr. 48-75). On February 3, 2016, the ALJ issued an unfavorable decision denying the plaintiff's claims for benefits. (Tr. 17-40). On February 3, 2016, the plaintiff submitted a request for review of the hearing decision (*see* Tr. 12-13), and on May 25, 2017, the Appeals Council denied the plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 6-8).

On October 11, 2017, the plaintiff filed her complaint in this pending action (Doc. No. 1; *see* Tr. 1-4 (request for more time to file civil action)),[3] and on December 15, 2017, the defendant filed her answer and administrative transcript, dated December 2, 2017. (Doc. No. 15). On April 14, 2018, the plaintiff filed her Motion to Reverse the Decision of the Commissioner (Doc. No. 17), and brief in support (Doc. No. 17-1 ["Pl.'s Mem."]),[4] and on June 12, 2018, the defendant filed her Motion to Affirm (Doc. No. 19), and brief in support (Doc. No. 19-1 ["Def.'s Mem."]). On September 5, 2018, the parties consented to the jurisdiction of a United States Magistrate Judge and the case was transferred to this Magistrate Judge. (Doc. No. 20).

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 17) is *granted in part such that this case is remanded for further proceedings consistent with this Ruling*, and the defendant's Motion to Affirm (Doc. No. 19) is *granted in part and denied in part*.

---

[3] On the same day, the plaintiff filed a Motion for Leave to Proceed *in Forma Pauperis* (*see* Doc. No. 2), which the Court granted. (Doc. No. 8).

[4] In addition, attached to the plaintiff's Motion is "Plaintiff's Proposed Stipulation of Facts." (Doc. No. 17-2).

II.     THE ALJ'S DECISION

Following the five-step evaluation process,[5] the ALJ found that the plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2008 through her date last insured of June 30, 2011. (Tr. 22, citing 20 C.F.R. § 404.1571 *et seq.*). The ALJ concluded that the plaintiff had the following severe combination of impairments: back pain due to degenerative disc disease, plantar fasciitis, a history of tarsal tunnel surgery, left knee pain status post-surgical intervention, insomnia, anxiety disorder, and depressive disorder. (Tr. 23, citing 20 C.F.R. § 404.1520(c)). He next found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-25, citing 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The ALJ concluded that, "[a]fter careful consideration of the entire record," the plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) through her date last insured, except that the plaintiff was limited to work that involved unskilled tasks, with no foot and leg controls; limited to work "not performed at heights or using ladders, ropes, and scaffolding[]"; limited "to no more than occasional coworker contact and public contact[];"

---

[5] An ALJ determines disability using a five-step analysis. *See* 20 C.F.R. § 404.1520(a). First, the ALJ must determine whether the claimant is currently working. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is currently employed, the claim is denied. *See* 20 C.F.R. § 404.1520(b). If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Regulations [the "Listings"]. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Balsamo*, 142 F.3d at 79-80. If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Balsamo*, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, he will have to show that she cannot perform her former work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant shows she cannot perform her former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. *See Balsamo*, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if she shows she cannot perform her former employment, and the Commissioner fails to show that the claimant can perform alternate gainful employment. *See* 20 C.F.R. § 404.1520(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

limited to "standing and walking four hours in an eight-hour workday[]"; and limited to no overhead lifting and reaching. (Tr. 25-39). The ALJ then concluded that, through her date last insured, there were "jobs that existed in significant numbers in the national economy that the claimant could have performed," (Tr. 39-40, citing 20 C.F.R. §§ 404.1569, 404.1569(a)),[6] and thus, the claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2008, through her date last insured, June 30, 2011. (Tr. 40, citing 20 C.F.R § 404.1520(g)).

III. <u>STANDARD OF REVIEW</u>

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). The court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks & citation omitted); *see also* 42 U.S.C. § 405(g).

Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citation omitted). The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel*, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citation omitted); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977) (citations omitted). However, the

---

[6] At the time of her hearing, the plaintiff was 52 years old. (Tr. 52). She completed the eleventh grade and has a GED. (Tr. 54).

court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted). Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. *See id.* Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise. *See* 42 U.S.C. § 405(g); *see also Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citation omitted); *Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

IV.  DISCUSSION

    A.  THE PLAINTIFF'S CLAIMS

The plaintiff contends that the ALJ failed to evaluate thoroughly the opinion of Dr. Stephan Lange when determining the plaintiff's RFC. In addition, the plaintiff argues that the ALJ's credibility analysis misapplied the law and failed to assess properly the plaintiff's reports of pain. (Pl.'s Mem. at 1, 3-9). In response, the defendant contends that the ALJ correctly weighed the opinion evidence in the record, and substantial evidence supports the ALJ's RFC finding. (Def.'s Mem. at 5-10). Additionally, the defendant argues that the ALJ properly analyzed and weighed the plaintiff's subjective complaints of pain. (Def.'s Mem. at 10-13).

    B.  RFC ASSESSMENT AND CONSIDERATION OF TREATING PHYSICIAN'S OPINION

An RFC finding is the most an individual can do despite his or her impairments, 20 C.F.R. § 404.1545(a), and the plaintiff bears the burden of demonstrating that her functional limitations preclude any substantial gainful work. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382(a)(3)(H)(i); 20 C.F.R. § 404.1512(a). In his RFC determination, the ALJ concluded that the plaintiff could perform work

at the sedentary level, as defined in 20 C.F.R. § 404.1567(a),[7] but was limited to work that (1) involved unskilled tasks, with no foot and leg controls, (2) was "not performed at heights or using ladders, ropes, and scaffolding[,]" (3) had "no more than occasional coworker contact and public contact[,]" (4) involved "standing and walking [for no more than] four hours in an eight-hour workday[,]" and, (5) did not require overhead lifting and reaching. (Tr. 25-39).

The plaintiff argues that the ALJ erred in failing to incorporate into his RFC determination, Dr. Lange's opinion that the plaintiff should not bend or constantly twist and was not able to sit or stand for more than one hour without a change in position. (Pl.'s Mem. at 5-6). She emphasizes that, because the relevant time period was from December 1, 2008 through June 30, 2011, it was "essential for the ALJ to carefully evaluate Dr. Lange's 2011 functional capacity opinion in the context in which it was provided." (Pl.'s Mem. at 3 (emphasis omitted)). In response, the defendant contends sedentary work allows for a change in position, and the "no bending" and twisting limitations would not preclude the plaintiff from performing the sedentary work identified by the vocational expert.[8] (Def.'s Mem. at 6-8).

Although there are volumes of medical records in the file relating to the period at issue in this case, as well as pre-dating the plaintiff's alleged onset date, and post-dating the plaintiff's date last insured, all of which this Court has reviewed, the plaintiff challenges only the physical portion of the ALJ's RFC finding to the extent that the ALJ did not incorporate all of the physical

---

[7] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Additionally, sedentary works involves sitting, as well as a "certain amount of walking and standing[.]" *Id.*

[8] The vocational expert testified that a person who is limited to light, unskilled work, who is limited to standing or walking "only four of eight hours of any workday[,]" with occasional coworker or public contact, and no overhead lifting or reaching, no operation of leg or foot controls, and no exposure to heights, would be able to perform the work of sorting and folding laundry, putting labels on clothes, and inserting advertisement supplements in newspapers. (Tr. 71-72). The vocational expert testified that if such a person was limited further to sedentary work, the person could "be an inspection table worker," a "preparer/polisher[,]" or a "final assembler, which pertains to optical goods, usually done in the rear of a[n] optician shop or production facility." (Tr. 72-73).

limitations articulated in Dr. Lange's February 11, 2011 opinion. Accordingly, the Court will not address the unchallenged mental health findings, or the other unchallenged physical findings.

    1.    <u>THE ALJ ASSIGNED "SUBSTANTIAL WEIGHT" TO DR. STEPHAN LANGE'S OPINION</u>

In a "Work Status Certificate[,]"[9] dated February 11, 2011, Dr. Lange, who had treated the plaintiff from November 2009 to April 2010, and then again from January to May 2011, released the plaintiff to perform "light duty" work, with the following limitations: "No lifting over 10 pounds. No sitting or standing for more than one hour without a change in position. No bending. No constant twisting." (Tr. 450; *see also* Tr. 454; *see generally* Tr. 449 (noting on May 9, 2011 that the plaintiff "never improved after her first operation[]"), 458-61 (reflecting September 2010 injury while working as a companion at Quality Homemakers)). The ALJ considered Dr. Lange's treatment records and opinion, noting that Dr. Lange "had the opportunity to conduct physical examinations of the claimant" and that Dr. Lange's "assessment was consistent with the medical evidence of the record, the claimant's treatment history during the period being adjudicated, and the claimant's ability to partake in several activities of daily living." (Tr. 35). Additionally, the ALJ appropriately noted that he assigned "significant weight to Dr. Lange's observations, diagnoses, his decision to decline assigning total disability to the claimant, his decision to place the claimant on permanent work restrictions, his assessment of an additional 5% disability for the claimant's lumbar spine with respect to her job, and his recommendation for the claimant to return to the office in June 2011." (Tr. 34-35). The ALJ, however, did not explain why he adopted some, but not all, of Dr. Lange's restrictions. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per

---

[9] This "Work Status Certificate" was completed in connection with the plaintiff's workers' compensation claim relating to an injury to her back in December 2010 while working as a companion for Quality Homemakers. (*See* Tr. 450, 453-54, 458). This work activity did not rise to the level of "substantial gainful activity[]" as defined in the Regulations. (Tr. 22). "Substantial gainful activity" is defined as "work activity that involves doing significant physical or mental activities [that] may be substantial even if it is done on a part-time basis." 20 C.F.R. § 404.1572(a).

curiam) (holding that, when the ALJ "do[es] not give the treating source's opinion controlling weight," factors listed in 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist[]"must be applied).

> 2. THE ALJ ERRED IN FAILING TO IDENTIFY THE FREQUENCY OF THE NEED TO ALTERNATE SITTING AND STANDING AND IN FAILING ARTICULATE HIS REASONS FOR REJECTING THE SITTING AND STANDING RESTRICTIONS IDENTIFIED BY DR. LANGE

Although the ALJ assigned "substantial weight" to Dr. Lange's opinion, he did not explain why he adopted some, but not all, of Dr. Lange's restrictions. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004); see 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion."). As discussed above, Dr. Lange opined that the plaintiff is limited to "[n]o sitting or standing for more than one hour without a change in position." (Tr. 450). He also opined that the plaintiff should be limited to no bending and no constant twisting. (Tr. 450). Yet, the ALJ concluded that the plaintiff retained the RFC to perform unskilled sedentary work that, *inter alia*, was "limited to standing and walking for four hours in an eight-hour workday." (Tr. 25).

The plaintiff argues that the ALJ erred in failing to incorporate Dr. Lange's opinion that the plaintiff was not able to sit or stand for more than one hour without a change in position, and in failing to explain adequately why he did not adopt this opinion. (Pl.'s Mem. at 5-6). The defendant counters that the ALJ did not err as sedentary work allows for a change in position, and the limitations identified by Dr. Lange did not preclude the plaintiff from performing the sedentary work identified by the vocational expert. (Def.'s Mem. at 6-8).

8

The defendant is correct that sedentary work allows for a change in position. Social Security Ruling ["SSR"] 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (An individual limited to sedentary work "may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically."). That said, however, it is important that the ALJ articulate the frequency of the change in position because, when the need to alternate position "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded." *Id.* As explained in SSR 96-9p, "[t]he extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand." *Id.* Accordingly, the Second Circuit has emphasized that, when an individual must alternate between sitting and standing, the ALJ's RFC assessment must specify the frequency of the need to alternate position. *Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order). In such a case, the ALJ's RFC assessment "must be specific as to the frequency of the individual's need to alternate sitting and standing," SSR 96-9p, 1996 WL 374185, at *6-7, since the frequency of a claimant's need to alternate positions affects the range of work that the claimant can perform. *Gavazzi*, 687 F. App'x at 100-01 (directing "the district court to instruct the ALJ on remand to 'be specific as to the frequency of [Gavazzi's] need to alternate sitting and standing,'[SSR 96-9p, 1996 WL 374185, at *6-7], and to consider the consequences of this frequency for the range of work that Gavazzi can perform[]").

In this case, the ALJ discussed Dr. Lange's opinion that the plaintiff must not sit or stand for more than one hour without changing her position. (Tr. 34). The ALJ then assigned Dr. Lange's opinion "significant weight." (Tr. 34). The ALJ, however, limited the plaintiff to "standing and walking four hours in an eight-hour workday[.]" (Tr. 25). He did not specify the frequency of the plaintiff's need to change positions, *see Gavazzi*, 687 F. App'x at 100, nor is it

9

clear from the ALJ's decision whether his standing and walking limitation was intended to incorporate the more restrictive limitation identified by Dr. Lange. The ALJ did not explain, nor can the Court glean from his opinion, why he did not adopt Dr. Lange's more restrictive limitation. He also did not explain whether the restriction of standing and walking up to four hours in an eight-hour workday implied that the plaintiff had to get up and stand or walk every hour, and if so, what impact the frequency of changing positions would have on the plaintiff's ability to perform sedentary work. *See Halloran*, 362 F.3d at 33; *see* 20 C.F.R. § 404.1527(c)(2); *see also Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order) (holding that an ALJ's decision is subject to deference provided that he provides specific reasons for his determination, and the "record evidence permits [the Court] to glean the rationale of the ALJ's decision[]" (internal quotations & citation omitted)).

Although the defendant contends that the ALJ based his RFC finding on the opinions of the State agency consultants and the opinion of Dr. Camile G. Salame (Def.'s Mem. at 8-10), the substance of the ALJ's opinion does not reflect that rationale. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's post hoc rationalizations for agency action." (internal quotations & citation omitted)). In his decision, the ALJ explained that the opinions of the State agency consultants, while "useful and informative[,]" were "not consistent with the [RFC] reached in [the ALJ's] decision[,]" as the opinions of Dr. Maria Lorenzo and John Shane are consistent with an RFC to perform light work. (Tr. 27-28); *see* 20 C.F.R. § 404.1567(b).[10] Additionally, the ALJ acknowledged that "new evidence more accurately reflects the state of the claimant's impairments to include her treatment through the date last insured and

---

[10] Specifically, on January 28, 2014, Dr. Lorenzo assessed the plaintiff as able to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; and, stand, walk and sit about six hours in an eight-hour workday. (Tr. 83-84). Similarly, on May 21, 2014, Shane assessed the plaintiff with the same abilities. (Tr. 96-97).

testimony." (Tr. 28). Accordingly, the ALJ assigned only "some, but not great weight to [their opinions] when determining the claimant's" RFC through her date last insured. (Tr. 28).

Similarly, the defendant argues that the ALJ's RFC finding is supported by the opinion of Dr. Salame, the plaintiff's neurosurgeon, who opined that the plaintiff had limitations which were consistent with an RFC for sedentary work. (Def.'s Mem. at 9-10). Dr. Salame treated the plaintiff for low back pain since November 2007 (*see* Tr. 282-83) and performed lumbar fusion surgery on the plaintiff in June 2008. (*See* Tr. 294-95, 311, 353, 440-42, 564-66, 712-15, 722-34*).* In his decision, the ALJ assigned Dr. Salame's opinion "some weight[,]" noting Dr. Salame's "treating relationship with the claimant and [Dr. Salame's] opportunities to examine the claimant." (Tr. 37). The plaintiff, however, does not dispute the ALJ's treatment of Dr. Salame's opinion, but, as discussed above, argues that the ALJ erred in not adopting the more restrictive limitations identified by Dr. Lange.

Accordingly, on remand, the ALJ must clearly articulate his treatment of Dr. Lange's more restrictive limitations, and in doing so, clearly explain the plaintiff's sitting and standing limitations, specify the frequency of the plaintiff's need to change positions, and consider the impact of the plaintiff's limitations on the range of sedentary work that the plaintiff can perform.

### 3. THE ALJ DID NOT ERR IN FAILING TO INCORPORATE DR. LANGE'S BENDING AND TWISTING LIMITATIONS

The plaintiff also argues that the ALJ erred in not considering Dr. Lange's limitations on the plaintiff's ability to bend or twist. (Pl.'s Mem. at 5). While postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work[,]" a "*complete* inability to

stoop[11] would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply[.]" SSR 96-9p, 1996 WL 374185, at *7-8 (emphasis in original); *see Ferguson v. Colvin*, No. 12 CV 33 (MAT), 2014 WL 3894487, at *7-8 (W.D.N.Y. Aug. 8, 2014) (noting that "sedentary jobs require a claimant to bend or stoop occasionally" and the job identified in that case – phlebotomist – requires "occasional" stooping so the ALJ's failure to "separately assess a claimant's capacity to perform the relevant strength demands" can result in an erroneous finding that a claimant is not disabled). In this case, however, the three jobs that the vocational expert identified– table worker, preparer,[12] and final assembler –specifically indicate that no stooping is required. (Tr. 39; *see* Tr. 71-73, Dep't of Labor, *Dictionary of Occupational Titles* ["DOT"] 739.687-182 (4th ed. 1991) (table worker); DOT 700.687-062 (preparer/polisher); DOT 713.687-018 (final assembler)[13]). Additionally, twisting is not referenced in any of these listed DOT descriptions, nor is it referenced in the definition of sedentary work. *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (summary order) (acknowledging that the evidence indicated that the plaintiff could not engage in, among other repetitive activities, repetitive twisting, and noting that the "ALJ correctly observed, none of [those] limitations" preclude the plaintiff from engaging in "sedentary" work). Accordingly, the plaintiff cannot satisfy her burden of showing that the ALJ erred in failing to include Dr. Lange's bending and twisting limitations in his RFC.

---

[11] Stooping is defined as "bending the body downward and forward by bending the spine at the waist." SSR 85-15, 1985 WL 56857, at *7 (S.S.A. 1985).

[12] Although the ALJ correctly cites to the DOT number for the "preparer" job about which the vocational expert testified (*compare* Tr. 39 *with* Tr. 73), he lists that job as a "roof painter" not as a "preparer." (Tr. 39). The plaintiff does not address this typographic error.

[13] Each of these three DOT listings include the following: "Stooping: Not Present – Activity of condition does not exist[.]" *See* DOT 739.687-182; DOT 700.687-062; DOT 713.687-018.

C.   THE ALJ'S CREDIBILITY ASSESSMENT

In his decision, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely credible for the reasons [he] explained in [his] decision." (Tr. 26). The plaintiff contends that the ALJ's credibility determination was not grounded in the evidence, nor was it "properly articulated with analysis of the specific factors outlined in the regulation." (Pl.'s Mem. at 9).

In his decision, the ALJ discussed the plaintiff's testimony and subjective complaints (Tr. 25-26), including the fact that the plaintiff would do her own wash, sweep, change sheets, bathe, groom and dress herself, prepare simple meals, use the internet, including Facebook, drive short distances, and watch her grandchildren. (*See* Tr. 55, 63, 205, 207-09, 432); *see Poupore v. Astrue*, 566 F.3d 303, 307(2d Cir. 2009) (concluding that the ALJ properly found the plaintiff's testimony about his limitations not fully credible in light of his ability to care for his child, vacuum, wash dishes, occasionally drive, watch television, read, and use the computer). Though the ALJ noted that the medical record did not reveal evidence of frequent emergency room visits, the record was replete with consistent medical treatment and medication management for chronic pain. The ALJ pointed out, however, that, despite the plaintiff's chronic pain, she "was able to partake in several activities of daily living." (Tr. 27; *see* Tr. 512 (back pain is "well controlled" with oxycodone); Tr. 842-43 ("totally functional on the medications[]"); Tr. 846 ("very stable on her current doses of medication[]"); Tr. 848 ("functional on the medications"); *see also* Tr. 851 (same); Tr. 857 ("feeling so well, in terms of pain management")). Although "an ALJ's credibility determination is generally entitled to deference on appeal[,]" *Selian*, 708 F.3d at 420; *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if patently unreasonable."

(citation and internal quotations omitted)), the ALJ's credibility determination must be considered in light of his RFC assessment. Since remand is necessary so that the ALJ can articulate clearly the plaintiff's sitting and standing limitations and explain his treatment of Dr. Lange's more restrictive limitations in this regard, the ALJ shall consider the limiting effects of the plaintiff's pain as it relates to her need to change positions.

V. CONCLUSION

Accordingly, for the reasons stated above, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 17) is *granted in part such that the matter is remanded for further proceedings consistent with this Ruling*, and the defendant's Motion to Affirm (Doc. No. 19) is *granted in part and denied in part.*

Dated this 3rd day of December 2018 at New Haven, Connecticut.

   /s/ Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge